T. BURKE WONNELL
2600 Denali Street, Suite 460
Anchorage, Alaska 99503
(907)276-8008, (f)(907)278-8571

CJA Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:05-CR-76-7 RRB |
| ) | |
| Plaintiff, ) | **RENEWED MOTION AND** |
| ) | **MEMORANDUM TO DISMISS** |
| vs. ) | **PURSUANT TO CRIMINAL RULE** |
| ) | **29** |
| PAULA MARIE ROBERDS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

COMES NOW Defendant Paula Marie Roberds, by and through undersigned counsel, and hereby renews her Motion To Dismiss made orally at the close of the government's evidence and again at the close of defendants' evidence at trial. This motion is brought pursuant to Criminal Rule 29 and authority cited below.

I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Roberds was tried between June 26 and June 30, 2006 on a single count of maintaining a drug involved premises. The government's evidence of Roberds' involvement in any controlled substance offense was minimal. Special Agent Mark Schmidt testified that he had observed Roberds drop co-defendant Roderick Williams off on W.23rd Avenue a number of blocks away from their residence. Schmidt testified that while Roberds

drove down the street, Williams engaged in what appeared to be a drug transaction. After the suspected transaction was completed, Schmidt testified that Roberds picked Williams up. Schmidt testified that he stopped the vehicle, and that bundled cash was found in a purse in the front of the vehicle where Roberds was seated. Schmidt also testified that the execution of a search warrant at Roberds' and Williams' residence turned up evidence of cocaine, a dirty scale, a dirty grinder, and a purported drug ledger. Schmidt testified that no prints were matched to any of the co-defendants, and that the author of the purported drug ledger could not be determined.

Shirlee Kakaruk offered the only other evidence involving Roberds. Kakaruk testified that she had purchased crack from Williams on numerous occasions at the W. 23rd residence and previously. Kakaruk testified that Roberds was present in the room when these transactions occurred.

At the close of the government's evidence, Roberds moved for dismissal pursuant to Criminal Rule 29 in reliance on the Court of Appeals decision in U.S. v. Tamez, 941 F.2d 770 (9th Cir. 1991). The Court denied that motion. At the close of defendants' presentation of evidence, Roberds renewed her Rule 29 motion and alerted the Court to the Court of Appeals decision in U.S. v. Verners, 53 F.3d 291 (10th Cir. 1995). The Court denied that motion as well.

## II.   THE CRACK-HOUSE STATUTE

Roberds was charged in a single count with violating 21 U.S.C. §856(a)(1), which makes it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance". The Court of Appeals addressed the definition of "purpose" in U.S. v. Tamez, 941 F.2d 770 (9th Cir. 1991). In that case, Tamez was charged with a violation of the other prong of the crack-house statute under 21 U.S.C. §856(a)(2). Tamez argued that that statute required proof that he intended that the building be used for an illicit purpose. In rejecting this argument, the Court of Appeals relied on the distinction between the two subsections of the statute:

> Tamez' assertion that the statute requires proof that he *intend* to use the building for a prohibited purpose under section 856(a)(2) also ignores the plain meaning and interrelation of the two § 856 provisions. Section 856(a)(1) states: "[I]t shall be unlawful to -(1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance. . ." This provision applies to purposeful activity and as such, if illegal purpose is, as Tamez suggests, a requirement of 856(a)(2), the section would overlap entirely with 856(a)(1) and have no separate meaning.
> The fifth circuit addressed this issue in *United States v. Chen*, 913 F.2d 183 (5th Cir. 1990). In that case, Chen was convicted of violating both 856(a)(1) and (2). The trial court charged the jury that with regard to *both* § 856 provisions, the defendant is guilty of *knowing* violations if she *deliberately ignored* unlawful conduct that should have been obvious. The fifth circuit reversed with regard to the section 856(a)(1) conviction, deciding that §856(a)(1) requires purpose or intention to

>    manufacture, distribute, or use a controlled substance
>    whereas
>> § 856(a)(2) is designed to apply to the person who may
>> not have actually opened or maintained the place for
>> the purpose of drug activity, but who has knowingly
>> allowed others to engage in those activities by making
>> the place "available for use . . . for the purpose of
>> unlawfully" engaging in such activity.  Therefore,
>> under § 856(a)(2) the person who manages or controls
>> the building and then rents to others, need not have
>> the express purpose in doing so that drug related
>> activity is engaged in by others (i.e., others have
>> the purpose).
>
> *Id.* at 190.
>    We reject Tamez' argument on the logic of *Chen*.  Both
>    provisions of § 856 must have meaning, and from the
>    language of the provision it is clear that (a)(1) was
>    intended to apply to deliberate maintenance of a place for
>    a proscribed purpose, whereas (a)(2) was intended to
>    prohibit an owner from providing a place for illegal
>    conduct, and yet to escape liability on the basis either of
>    lack of illegal purpose, or of deliberate ignorance.
>
>                                              <u>Id.</u>, at 774.

In further defining the requisite mens rea for conviction under subsection (a)(1), the Tenth Circuit likewise cited favorably to <u>Chen</u> in <u>U.S. v. Verners</u>, 53 F.3d 291 (10th Cir. 1995).  In that case, a mother and son were each convicted of multiple controlled substance offenses including a violation of 21 U.S.C. §856(a)(1) for the manufacture of crack at the mother's house.  The evidence demonstrated that there were scales, cut, razor blades, money, guns, and small amounts of cocaine found in the room used primarily by the son.  In the communal kitchen, agents found cocaine splatters in the microwave, a pyrex cup containing a crack "cookie" weighing over

100 ounces [note: the undersigned believes, based upon his experience, that this is a misprint and that the Court of Appeals meant a cookie weighing over 100 grams; it is hard to believe that a six pound chunk of crack could fit into anything described as a "pyrex cup"], baking soda, and baggies, reflecting that the kitchen was used to cook crack.

In reversing the mother's conviction under subsection (a)(1), the Court of Appeals observed that ". . . to be convicted under 856(a)(1), the defendant must personally have the 'specific purpose'; it is not 'sufficient for others to possess it.'" Verners, at 296, citing Chen at 189-190. The Court of Appeals found that the evidence supported that the son ran the drug business, and that the mother had minimal involvement. The mother's involvement, however, was not enough to support that her "purpose" with respect to the residence was sufficient under the statute:

> . . . there is no evidence that Guesinia Verners occupied more than a minor role in the home-based drug business of her son. That is not to say that she may not, in fact, have actively taken part in the business. We find, however, that the evidence presented supports the conclusion that her primary purpose in maintaining the house was as a home for herself and her two daughters. There is no evidence that she used Laroan Verner's bedroom or was aware of its contents. There is no evidence that she "managed" or "supervised" her son's business. No rational jury could conclude beyond a reasonable doubt that she had the requisite mental purpose for conviction under this statute.
>
> Id., at 297.

### III.  ARGUMENT

Even viewing the evidence in the instant case in the light most favorable to the government, the government has not shown that Roberds was involved in Roderick Williams' drug dealing business at the W.23rd residence to any greater extent than the mother in <u>Verners</u> was involved in her son's.  The evidence suggested that Roberds was present when he sold crack to Kakaruk, and that she drove him on one occasion when he purportedly engaged in a transaction that appeared to be a drug deal.  The evidence clearly showed that Roberds used the W.23rd residence as a home for her and her daughter.  That evidence does not demonstrate that Roberds had anything but a tangential connection to Roderick Williams drug business at the W.23rd residence.  Therefore, that evidence is insufficient to show that Roberds had the "purpose" required for conviction under 21 U.S.C. §856(a)(1).  The jury is not free to substitute Roderick Williams' purpose for Roberds' in determining whether the requisite purpose existed under subsection (a)(1).  With insufficient evidence in the record, no reasonable jury could have found proof beyond a reasonable doubt that Roberds committed the offense for which she was found guilty.

### IV.  CONCLUSION

The government failed to admit sufficient evidence of the requisite mental state for Roberds' offense.  Therefore, the

Court should overturn the jury's guilty verdict on Count III as it pertains to Roberds, and enter a judgment of acquittal forthwith.

RESPECTFULLY SUBMITTED this 7th day of July, 2006.

By: s/ T. Burke Wonnell_____
CJA Counsel for Defendant
Paula Marie Roberds
2600 Denali St., Suite 460
Anchorage, AK 99503
Phone: (907)276-8008
E-mail:
tburkewonnell@alaska.net
AK Bar No. 9610049

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies
of the foregoing were sent by electronic mail to:

Crandon Randell
Scott Dattan
Herbert A. Viergutz
Sue Ellen Tatter
Lance C. Wells
David R. Weber
Charles Coe


this 7th day of July, 2006.


_____s/ T. Burke Wonnell_____
T. BURKE WONNELL